

2/2/2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**United States District Court**
**Northern District of Illinois**

| | | |
|---|---|---|
| David Martin, | ) | **1:23-cv-00656** |
| Plaintiff | ) | **Judge Elaine E. Bucklo** |
| | ) Case No: | **Magistrate Judge Maria Valdez** |
| | ) | **RANDOM** |
| V. | ) **VERIFIED COMPLAINT** | |
| | ) | |
| Richar Gu | ) | |
| WellSky | )   Request for Jury Trial | |
| Unknown Individuals | ) | |
| Defendants | ) | |

## **VERIFIED COMPLAINT**

**The parties to this complaint**

**1. The Plaintiff**

> **Name:  David Martin, a natural person.**
>
> **Street Address: 5352 S. Princeton Ave**
>
> **City and County: Chicago, Cook County**
>
> **State and Zip Code: Illinois, 60609**
>
> **Phone: 773-893-0813**
>
> **E-Mail Address: davidmartinlitigation@gmail.com**

**United States District Court**
**Northern District of Illinois**

**The Defendant(s)**

**2. Name: Richard Gu, a natural person**

   **Phone: 978-844-7740**

   **Email Address: Richard.Gu@ careporthealth.com**


**3.  Name: Wellsky Corporation, a corporation.**

   **Address: 11300 Switzer St Overland Park,**

   **State: Kansas, 66210-3665**

   **Phone: (913) 307-1000**

**United States District Court**
**Northern District of Illinois**

## JURISDICTION AND VENUE

This court has jurisdiction under the statute 28 U.S. Code § 1332. Also Known as Diversity of citizenship. The federal statute provides (a)The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States; (c) For the purposes of this section…(1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…

The court has jurisdiction because this lawsuit involves me (David Martin), a citizen of the state of Illinois, Richard Gu whom is believed to live in the State of Massachusetts, and the corporation Wellsky which is in the state of Kansas. The matter in controversy exceeds $75,000.

**United States District Court**
**Northern District of Illinois**

## STATEMENT OF FACTS

1. On or around May 15th 2022 I applied for a Sr. Devops role with UnitedHealth Group.

2. On or about June 8th 2022, I was interviewed for a Sr. DevOps Engineer role by Richard Gu. In that interview I explained to Richard that I had a significant amount of experience as a system engineer which involved Linux, Windows, and several scripting languages. I communicated to him that I was exposed to Kubernetes, but I did not have much experience with it. Richard, also inquired about my experience with Octopus and Ansible Tower. I responded indicating that I had no experience with Octopus. I also explained that I had a decent amount of experience with Ansible, but I did not have any experience with the add on module known as Ansible Tower.

**United States District Court**
**Northern District of Illinois**

3. On July 6th 2022, I spoke to the human resource professional and negotiated a sign on bonus of $5000. The bonus was supposed to have been paid with my first paycheck.

4. On July 8th 2022, I received an Offer letter to work for UnitedHealth group.

5. On or around July 18th 2022. I was informed by Richard, that I would be working for a company that was being sold to Wellsky. He also told me that I would be helping to complete the transition. Richard reinforced to me that this was a long term opportunity. Communicating that in the short term I would be focused on the transition to Wellsky. In the long term I would be working with Kubernetes in google cloud.

6. On or around August 2nd 2022, There was a systems outage which lasted several days. The Kubernetes platform crashed. As a result, the software developers were unable to do their work until this system was brought online. At that time, I was not working on Kubernetes and I did not have access to that system.

7. On or Around August 11th 2022, I inquired about the sign on bonus. The Human Resource team told me I would receive it after the first month. August On or around August 15th 2022, UnitedHealth group change the terms of my bonus. The new term was that the bonus would have to be paid back if I quit, or if I was fired for cause.

**United States District Court**
**Northern District of Illinois**

8. Between the month of September 2022 and January 10th 2023, my employment was handed off to several different companies. Initially I was employed by UnitedHealth group for an estimate of 2 months. I was later handed off to Allegis, and at some point I was handed off to Wellsky.

9. On or around September 15th 2022, I reached out to Rojil and Nima for training on the software deployments. At that time the organization did not have any training material or resources for their software releases. There was some cryptic information but this was information without context. On multiple occasions, I attempted to schedule training sessions with Rojil and Nima. Both Rojil and Nima would accept my calendar invites for training, but they would cancel the event just before it was to begin. Another teammate Jeffry Ames was never able to attend training sessions because they were always canceled at the last minute. I also tried to get support from our team's coordinator Khadijiat. She encourage Rojil and Nima to provide training, but the training would never happened. Eventually I raised this issue with Richard, and I warned him that he has only two people who knows how to do the software releases. I also warned that there is essentially no training material available, the organization would not be able to do software releases if those two became unavailable... Richard responded by announcing to the entire Devops team that Rojil and Nima would be the only two responsible for the software releases, and myself, Jeffry, and Luis would be responsible for the infrastructure and supporting Kubernetes

**United States District Court**
**Northern District of Illinois**

10. From the Month of September 2022 to date there has been several system disruptions on the Kubernetes systems. These disruptions were not full blown outages. However the disruptions reduced the functionality of the Kubernetes systems any where from 16 minutes to 2 hours.

11. On or around September 15th 2022, I informed Richard that I did not have access to VMware and that it was necessary for managing Kubernetes. Richard told me that I did not need access, and he said for me to focus on helping the developers with transitioning their applications from virtual machines to Kubernetes. From that point I simply assisted the developers with transitioning their applications. Not having access to VMware, meant that my work was limited, and I was unable to assist with several aspects of Kubernetes, such as building a cluster, adding nodes to a cluster, etc.

12. No one on our team received training for Kubernetes.

13. On or about September 27th 2022, Richard assigned me the task of figuring out how to apply Velero an open source backup solution to our Kubernetes cluster. At the same time and without my knowledge he assigned the same task to Luis Acre. Eventually we both became aware we were working on the same task. Luis was able to figure out how to use velero before me, and as a result Richard assigned majority of the Kubernetes work to Luis.

**United States District Court**
**Northern District of Illinois**

14. On or around October 10th 2022, while Luis was working on the Kubernetes system, there was another system outage. I explained to Richard and the rest of the team that the outage could have been avoided if it was properly planned. Richard responded by saying "You talk to much!". At that point I stopped trying to point out the reasons the outage could have been avoided.

15. On or around October 13th 2022, Richard announced to the team that Octopus was garbage and he does not know why this tool was ever chosen. He indicated that it is completely unnecessary. He communicated to us that we should not worry about it to much because he intended to get rid of it.

16. On or around November 14th 2022, Richard assigned me to work on an Ansible playbook to install software called splunk. At that time, I was unaware that Jeff was working on the exact same thing. He a later assigned Mohan to work on the same project without my knowledge. I soon discovered that Jeff was working on the same task. We both collaborated on the task and we both encountered a software bug that prevented the automation of splunk installs on centos 6. While both Jeff and I had created an ansible playbook for centos 7, we were unable to do so for centos 6.

17. On or around November 17th 2022, I discovered that Mohan was working on the same task that both Jeff and I was assigned to. I then asked why Mohan was working on the same task without my knowledge. I also alleged that this was a waste of my time and the companies time. In a separate meeting I attempted to

**United States District Court**
**Northern District of Illinois**

tell Richard that the practice of assigned multiple people to the same task was

unhealthy and counterproductive. He responded by saying that this is how we do

things here, and if you don't like it you can go someplace else. He then said he

did not want to discuss this with me any more.

18. On around November 21st 2022, Mohan claimed to have resolved the centos 6

bug. However this turned out to be not true as the playbook that Mohan created

only worked with centos 7.

19. On or around January 4th 2023, there was another Kubernetes system outage. At

the time I was unaware of this, but Richard told me that he had directed Luis to

migrate the staging and the QA environment to a new cluster. Some of the work

had been done before Luis went on vacation and for what ever reason the

system crashed while Luis was on Vacation. This system outage prevented the

developers from completing their monthly deployment… I spearheaded the work

to recover from the outage. Some of the work done was noted in work order #

CTDEVOPS-14531. Also related, work order # INF-16366 in which I collaborated

with another team to resolve mount point issues. I received several compliments

from developers and my coworkers for the recovery of the staging environment.

Based on that successfully work. I was assigned another worker order #

CTDEVOPS-14546, which was for bringing the QA environment back online.

That work was successful, and I was given several compliments from my

coworkers and the developers.

**United States District Court**
**Northern District of Illinois**

20. On or around January 10th 2023, Richard announced that he forgot that Nima was going on vacation for 1 month, and he announced that Rojil was to train Adeal on the monthly deployment process.

21. On or around January 13th 2023, I was given a negative performance review by Richard. Stating among many things stating;  1. "You have not been producing the quality of work expected for someone working in a DevOps Engineering position", 2. "You have been unwilling to collaborate with other members of the team", 3. "you were provided training, resources, and support during the onboarding process, you have failed to demonstrate the expected ability level for a Senior DevOps Engineer", 4. "As a senior DevOps engineer, you are expected to complete Transition platform monthly build and release independently by utilizing Ansible Tower and Octopus efficiently." He also told me that my work was extremely low quality. He communicated that I was responsible for performing the software deployments and that I was not able to do the work on my own. It should be noted that no specific examples have been provided in this review. Richard told me that this review is based on his opinion and the opinion of others.

22. On or around January 16th 2023, I announced to the team that I would need to allocate some time to focus on some work I needed to do for Human Resources. I was then assigned a heavy workload.

**United States District Court**
**Northern District of Illinois**

23. On or around January 27th 2023, Richard and I met a second time to discuss my

review. At that time I told Richard that I had never received any training for the

software deployments. I also stated that training was needed because I would

need to get logistical information regarding the software deployments.  He then

communicated that the time for training was during the onboarding process. To

which communicated that training was necessary. After pressing for training he

said that he would ask Rojil to assist me with training.


24. On or around January 23rd 2023, I unloaded most of the work I was assigned so

that I could respond to Richard's negative review.


25. On or around January 27th 2023, at 9:30 AM I was assigned to resolve a system

outage. I worked on that issue up to 1 PM when I noticed that there was a strong

possiblility that I would miss Richard's regularly scheduled meetings with me at

2PM. As a result I cancelled the meeting with the reasoning that I would be busy

working on the outage. The outage was resolved around or about 1:45 PM.

However there was still some clean up work needed. I decided that the clean up

work could wait until after lunch. When I attempted to take a lunch break, Richard

insisted that we meet.


26. On or around January 27th 2023, Richard an I met a third time. In this meeting I

communicated that not only was a receiving training on the software

deployments, but I was also creating training materials that others could use.

**United States District Court**
**Northern District of Illinois**

Richard communicated that if your just leaning the deployment process now,

then its already too late.

27. I have never received a complaint about the quality of my work. I have received

several compliments and congratulatory comments from several projects that I

have worked on. For example; after collaborating on work order CTDEVOPS-

14633, Luis thanked me for helping to solve the problem. While working on work

order CTDEVOPS-14656, I received compliments from Rojil. I received a

compliment from Theresa after completing work order CTDEVOPS-14546.

Richard congratulated me after working on CTDEVOPS-14043.


# FIRST CAUSE OF ACTION

# FRAUDULENT INDUCMENT


I allege that the defendants' committed fraudulent inducement. **"Fraudulent**

**inducement requires proof of five elements: "(1) a false statement of material fact;**

**(2) known or believed to be false by the person making it; (3) an intent to induce**

**the other party to act; (4) action by the other party in reliance on the truth of the**

**statement; and (5) damage to the other party resulting from such reliance."** I

alleged that; I applied for a job with UnitedHealth Group. I interviewed for a job with

UnitedHealth Group. Prior to accepting the job offer, it was not revealed to me that

UnitedHealth Group was not my intended employer. After I accepted the offer and one

**United States District Court**
**Northern District of Illinois**

week before I was to start I found out that I would be working for other companies. At

that time Richard insisted that this was a long term opportunity… I alleged that;  The

defendants essentially lied to me because they knew or should of known that the job

would transfer from UnitedHealthGroup to other entities  such as Allegis and Wellsky, I

allege that the defendants offered me a job with UnitedHealth Group knowing full well

that they intended to transfer my employment to other corporations. I applied to the Job

because it was with UnitedHealth Group, a company rated as number 5 of the Fortune

500 list. I believed at the time that I was walking into a stable work environment, and I

fully believed that the job would last at least a year. After which I would be walking away

with the work history of another Fortune 500 company. However, I allege that in reality

the situation was completely opposite. I argue that the job environment was unstable

and it was transient in nature. I allege that Richard misled me when he said that this

would be a long-term opportunity. I was simply being hired to help with the transition of

assets from UnitedHealth Group to Wellsky. As a result I only worked for UnitedHealth

group for about a month until my employment was transferred to other companies…

Now that the transition has been completed, the defendants are now trying to concoct a

reason to fire me... I allege that the decision to fire me has already been made and the

performance review is simply a formality. As a result of the defendant's fraudulent

inducement, I cannot claim the work experience with UnitedHealth Group and I am soon

to suffer a loss of income.

**United States District Court**
**Northern District of Illinois**


# SECOND CAUSE OF ACTION

# NEGLIGENT MISREPRESENTTAION


The aforementioned arguments apply here. I allege that the defendants committed negligent misrepresentation. "**In order to state a claim for negligent misrepresentation a party must allege: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." First Midwest Bank, N.A. v. Stewart Title Guar. Co., 218 Ill.2d 326, 300 Ill.Dec. 69, 843 N.E.2d 327, 334-35 (2006).** I alleged that; (1) First the defendants mislead me when they offered me a job with UnitedHealth Group knowing full well that the job was with other companies… Second once it was revealed that I would be working with other companies, I was then mislead to believe that this would be a long term opportunity.  (2) The defendants were negligent in not revealing the fact that I would not be working for UnitedHealth Group. Even if they were unsure whom I would be working for, I argue that they should have giving me all the details so that I could make an informed decision… Richard was also negligent when he communicated that this would be a long term opportunity (3) The defendants were simply trying to induce me to accepting a short term position with other companies (4) At the time I believed that I would be working for united health group. When it was

**United States District Court**
**Northern District of Illinois**

revealed that I would not be working for UnitedHealth Group, I thought at least it was a

long term opportunity, (5) I am damaged by the defendants actions because I am not

able to claim the working experience with UnitedHealth Group and I will suffer a loss of

income. (6) The defendants had a duty to reveal that I would not be working for

UnitedHealth Group and that it was a short term opportunity. They should have told me

that we are selling some assets and we would like to hire you to help transition those

assets. This job should last about 6 months.

# THIRD CAUSE OF ACTION

# DEFAMATION OF CHARACTER

I alleged that Richard committed defamation of character. ("**To state a claim for**

**defamation ... The plaintiff must allege facts showing that Defendants: (1) made a**

**false statement about him; (2) the statement was publicized to a third-party; and**

**(3) he was damaged as a result.") See Dubinsky v. United Airlines Master Exec.**

**Council, 708 N.E.2d 441, 446-47 (Ill. App. Ct. 1999).** Richard submitted a report about

my performance to Wellsky's human resource department stating among many things

that; 1. I have not been producing the quality of work expected for someone working in

a DevOps Engineering position, 2. That I have been unwilling to collaborate with other

members of the team, 3. That I had been provided training, resources, and support

during the onboarding process, and that I failed to demonstrate the expected ability

level for a Senior DevOps Engineer, 4. As a senior DevOps engineer, I am expected to

**United States District Court**
**Northern District of Illinois**

complete transition platform monthly build and release independently by utilizing Ansible

Tower and Octopus efficiently. He also told me that my work was extremely low quality.

I allege that the entire performance report is blatantly false. Most of the things written in

the report is an outright lie.

      I was 100% truthful when I was interviewed by Richard. I told him I had a strong

background as a system engineer. I told him that I knew Linux, Windows, and several

scripting languages. I communicated to him that I was exposed to Kubernetes, but I did

not have much experience with it. I told him that I had no experience with Octopus. I

also explained that I had a decent amount of experience with Ansible, but I did not have

any experience with the add on module known as Ansible Tower… I hit the ground

running once I had access to the systems. The facts will show that there are several

specific situations where I help the organization resolve several systems outages. For

example, I helped the organization recover from an outage in their staging and quality

assurance environment. Work order CTDEVOPS-14546 captures some of this work,

and I received congratulatory comments from co-workers. Another specific example can

be found in work order CTDEVOPS-14067, a situation where the monthly deployment

was at risk of being delayed because of an issue with the systems repository. After this

work was completed, I received congratulatory comments from my co-workers. In both

of these examples I used up to three different scripting languages.

      In regards to my work quality… Richard did not provided any specifics examples

of poor work quality on my part… I have never received any complaints about the

quality of my work. In fact, the opposite is true. I have received several compliments

**United States District Court**
**Northern District of Illinois**

from my co-workers and software developers. In regards to collaboration… I collaborate

with our team members on a daily basis. Our team has a daily collaboration session

called Devops hour. Richard is unaware of my contributions to team collaboration

because he only attend these meetings to make announcements. In this session, we

collaborate to solve problems that we are unable to solve on our own. I also collaborate

with the developers to help solve their problems.

Richard alleges that I received training during the onboarding process. I argue

that this is a flat out lie. I did not receive any training. In fact, shortly after I started

working there, I reached out to Rojil and Nima for training on the software deployments.

At the time they were the only two people doing the software releases. After I reached

out to them, I found out that the organization did not have any training material or

resources for their software releases. The organization did have some cryptic

information about their software releases, but this was information without context. On

multiple occasions,  I attempted to schedule training sessions with Rojil and Nima. Both

Rojil and Nima would accept my calendar invites for training, but they would cancel the

event just before it was to begin. Saying that they were too busy. This happened on at

least 5 occasions. On several of those occasions another teammate Jeffry Ames

attempted to attended the training, but was never able to do so because the sessions

were always canceled at the last minute. I also tried to get support from our team's

coordinator Khadijiat. She encourage Rojil and Nima to provide training, but the training

would never happened. Eventually I raised this issue with Richard, and I warned him

that he has only two people who knows how to do the software releases. I also warned

that there is essentially no training material available, the organization would not be able

**United States District Court**
**Northern District of Illinois**

to do software releases if those two became unavailable… Some time after raising

these issues, Richard announced to the entire Devops team that Rojil and Nima would

be the only two responsible for the software releases, and I would be responsible for

infrastructure and supporting Kubernetes. At that point I told Richard that I did not have

access to Vmware(vsphere), which was necessary to manage an aspect of Kubernetes.

Richard told me that I did not need access, and he said for me to focus on helping the

developers with transitioning their applications to Kubernetes. From that point I simply

assisted the developers with transitioning their applications. Which essentially included

trouble shooting their applications on the Kubernetes platform. No one on our team

received any training for Kubernetes. I started some "self pace" training. My skill level

with Kubernetes is just as good as any of my teammates. I can perform any of the task

that they can perform… The onboarding process was a joke. One team member helped

me get access to 3 systems and then he disappeared. There was no training received

and there was no support given.

     In regards to the "transition platform monthly build and release"… Richard is

grading me on work that I was not assigned to do. Richard is forgetting that he

announced to the entire team that Rojil and Nima were the only two people who would

be responsible for the "transition platform monthly build and release". Also known as

monthly deployments.

     Again, I allege that Richard has created a fictious performance report and he has

submitted this report to Wellsky's human resource department. Nothing in this report is

true. Because of this report I have received a negative rating and I am forced to go

**United States District Court**
**Northern District of Illinois**

through a performance review. I alleged that I have been subjected to emotional

distress because of this report.


# FORTH CAUSE OF ACTION

# INTENTIONAL INFLICTION

# OF EMOTION DISTRESS


All of the aforementioned arguments apply here. I allege that the defendant's

intentionally subjected me to emotional distress.  **The ("requirements necessary to**

**demonstrate the intentional infliction of** emotional **distress: (1) the conduct**

**involved must be truly extreme and outrageous; (2) the actor must either intend**

**that his conduct inflict severe emotional distress, or know that there is at least a**

**high probability that his conduct will cause severe emotional distress and (3) the**

**conduct must in fact cause severe emotional distress. See id. at 809 (emphasis in**

**original). This tort does not require a contemporaneous physical impact or**

**injury.") See Corgan v. Muehling, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602,**

**609 (1991).** I allege that; (1) all of the lies that the defendants has told me resulted in

outrageous conduct, (2) the defendants knew or should have known that their lies would

cause emotional distress, (3) Because of the defendants lies and deceit I have had

several feinting spells, I have not been able to sleep because I am usually awake

worrying about this situation, and I have suffered sever headaches.

**United States District Court**
**Northern District of Illinois**

# FITH CAUSE OF ACTION

# NEGLIGENT INFLICTION

# OF EMOTION DISTRESS

All of the aforementioned arguments apply here. I allege that the defendants negligently inflicted me with emotion distress. **("To state a claim for negligent infliction of emotional distress, a plaintiff must allege: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; and (3) that plaintiff's injury was proximately caused by that breach.") Corgan v. Muehling, 143 Ill.2d 296, 306, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991).** (1) I allege that the defendants owed me a fiduciary duty to be honest and strait forward with me because they were my employers/managers, (2) the defendants breached their duty when they lied to me and produced untruthful reports about me, (3) My injuries are the direct results of the defendant's lies and deceit.

**I would like to reserve a chance to amend this pleading under the Federal Rules of civil procedure 15.**

**United States District Court**
**Northern District of Illinois**

**Wherefore, I Pray:**

1. Any remedy that this court can provide.

2. A judgment of $1,000,000 for fraudulent inducement.

3. A judgment of $1,000,000 for negligent misrepresentation.

4. A judgment of $1,000,000 for defamation of character.

5. A judgment of $1,000,000 for infliction of emotional distress.

6. A judgment of $1,000,000 for negligent infliction of emotional distress.

7. A judgment of $1,000,000 for punitive damages.

David Martin
5352 S. Princeton, Chicago IL 60649
Phone: 773-893-0813
Email: davidmartinlitigation@gmail.com

Signature of Plaintiff: *David Martin*
Date of signing: 2/2/23

**United States District Court**
**Northern District of Illinois**